HINES v. WITHERSPOON.

Opinion delivered March 29, 1920.

1. CARRIERS—DAMAGES—MENTAL SUFFERING.—In an action for damages for personal injuries caused by negligence of a carrier's servant in directing plaintiff to a wrong train, causing her to walk a mile and a half and to ride some distance on a hand car, it was proper for the jury to consider mental suffering, consisting of annoyance and humiliation which was inseparable from the physical burdens imposed by the necessary debarkation from the train, the walk back to the nearest station, and the night ride on a hand car to her destination.

2. CARRIERS—DAMAGES—WHEN EXCESSIVE.—Where a passenger was negligently directed to the wrong train by a brakeman, necessitating a debarkation, a walk of a mile and a half, and a cold night ride on a hand car, resulting in exposure and a cold, but no permanent impairment of health, a verdict of $800 was excessive and will be reduced to $500.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; judgment modified.

*Geo. B. Pugh* and *Thos. S. Buzbee*, for appellant.

The verdict is excessive under the testimony, and the court erred in giving instruction No. 2 for plaintiff, the effect of which was to increase the verdict. 100 Ark. 356; 103 *Id.* 558; 69 *Id.* 402; 89 *Id.* 558. Nothing should have been allowed for mental pain or suffering. Mere inconvenience or physical suffering even would not justify a recovery for mental pain. 65 Ark. 177.

*H. B. Means*, for appellee.

The evidence justifies the vedict and appellee was entitled to recover more than nominal damages. 81 Ark. 431; 103 *Id.* 561; 131 *Id.* 48. There was no error in the instructions and the verdict is not excessive. *Supra.*

McCULLOCH, C. J. Appellee instituted this action against the Director General of Railroads, in charge of the lines of the Chicago, Rock Island & Pacific Railroad Company, to recover compensation for injuries resulting from alleged negligence of the employees in directing her to embark on the wrong train, thus interrupting her

journey and causing suffering and inconvenience. She recovered judgment below for the sum of $800, and an appeal has been prosecuted to this court by the Director General of Railroads.

Appellee resided at Witherspoon, a station on the line of the Missouri Pacific Railroad not far from Haskell, which is a station at the junction of the Missouri Pacific Railroad and the Chicago, Rock Island & Pacific Railroad. She received information of the illness of her sister who resided near Thiel, a station on one of the lines of the Chicago, Rock Island & Pacific Railroad. She started to go to see her sister and took passage at Witherspoon for Haskell, taking her two children, aged respectively ten and twelve years. She had to wait over at Haskell several hours for the train out to Thiel, and while so waiting she met and became acquainted with a Mr. Parker, who lived in that locality, and who was also going to Thiel. Appellee bought tickets for herself and two children, which entitled her to ride from Haskell to Thiel, and Mr. Parker also purchased a ticket. A train came in over the Rock Island road and appellee with her two children, and also Mr. Parker, boarded it. They presented their tickets to the brakeman as they entered the train and informed the brakeman that they were going to Thiel. The brakeman looked at the tickets and directed them to board the train, which they did. Shortly after the train moved out the conductor or auditor came along and after looking at their tickets informed them that that train would not carry them to Thiel. He offered to carry them on to Butterfield where they could get off and take another train back to Haskell. At that time they were about a mile and a half out from Haskell and they expressed to the conductor their preference to have the train stopped so that they could debark and walk back to Haskell. The conductor stopped the train and appellee with her children, accompanied by Mr. Parker, got off the train and walked back to Haskell. Appellee had a heavy suitcase which she carried a part of the way herself, and Mr. Parker carried it the

remainder of the way. When they got back to Haskell they found that the train for Thiel had already passed. By that time night came on, and Mr. Parker made an arrangement with the section foreman of the railroad to carry them to Thiel on a motor car. The foreman consented to do that and got out the car and put it on the track and carried appellee and her children and Mr. Parker to Thiel, the journey being without much unusual incident.

The undisputed evidence was that the weather was good, but appellee testified that she got cold on the trip on the car, and that Mr. Parker sat in front of her to shield her from the cold wind. When they arrived at Thiel, they walked out in the country a short distance to where appellee's sister lived. It appears from the testimony that appellee had been suffering from appendicitis for a number of years and had been under the treatment of a physician. The disease had assumed acute form at several different times before this occasion, and the physician had recommended an operation. Appellee testified that as soon as she completed the trip involved in this lawsuit the appendicitis pains returned, and that she had suffered considerably on that account, and that since the occurrence her weight had been reduced from 133 pounds to 111 pounds.

Counsel for appellant conceded in the trial below, and concedes now, that the evidence establishes negligence on the part of the brakeman in misdirecting appellee to the train which did not run to Thiel, so the only question in the case relates to the amount of damages to be recovered.

The court gave the following instruction over appellant's objection:

"You are instructed that, if your verdict is for the plaintiff, you will assess as her damages such a sum of money as you find from the evidence will fairly compensate her for all pain and suffering both of body and mind, if any, and on account of her weakened condition

of health, if any, suffered by her on account of the negligence of the defendant.''

It is argued that this instruction is erroneous in embracing the element of mental suffering, the contention being that there can be no recovery in this case on that ground.

The court gave an instruction at appellant's request telling the jury that appellee was not entitled to recover ''for any mental anguish or grief which she experienced by reason of the serious illness of her sister, nor by reason of any delay which she incurred in reaching her sister's bedside.'' The effect of this instruction was to qualify the language of the other instruction and confine its operation to mental suffering caused otherwise than by the serious illness of appellee's sister and the delay incurred in reaching her sister's bedside. In other words, the operation of instruction No. 2 was confined to such mental pain as was immediately caused by the interruption of the journey and the additional physical burdens imposed by that interruption. It related to the sense of annoyance and humiliation which which was inseparable from the physical burdens imposed by the necessary debarkation from the train, the walk back to Haskell and the night ride on the car to Thiel. It was proper for the jury to consider that kind of mental suffering, which was thus related to the physical injury, and it was not incorrect for the court to embrace that element in the instructions.

The next and last contention is that the verdict was excessive, and in this we are of the opinion that appellant is correct. There is no evidence of any serious or permanent injury. Appellee was required to walk back to Haskell, a distance of about a mile and a half, and carry her suitcase a part of the way. It was in the daytime, and she was accompanied by a gentleman with whom she had become acquainted, and who assisted her on the journey. The trip from Haskell to Thiel on the car was without especial incident except that appellee was cold, and the jury might have found also that

the jolting of the trip was the cause of the return of pains from appendicitis. There was no evidence, however, that her health was seriously impaired as a result of this journey, for the physician testified that she had had acute attacks of appendicitis, and that he had recommended an operation and was of the opinion that appellee would get no relief until she had an operation. This preceded the incident involved in this suit. It is true that appellee testified that she had lost considerable weight since this trip, but the evidence does not warrant the conclusion that it was caused by the exposure and hardships of this trip. The evidence justified the finding that appellee sustained substantial injury on account of the negligence, but it was not of a serious nature, nor was it permanent.

We are of the opinion that $800 is an excessive recovery. It is difficult in a case of this kind to fix a definite limit, but we do not believe that a recovery in any sum in excess of $500 ought to be sustained.

The judgment will, therefore, be modified so as to reduce it to that amount. It is so ordered.