DAVIS *v.* WELLS.

Opinion delivered May 21, 1923.

1. CARRIERS—CHANGE OF CARS—NOTICE TO PASSENGER.—Though a ticket purchased by a passenger showed on its face that a change of cars at a certain station is required, the carrier is liable for carrying the passenger beyond such junction point unless the passenger knew, or in the exercise of reasonable care ought to have known, that it was necessary to change cars at such junction point.

2. CARRIERS—CARRYING PASSENGER BEYOND JUNCTION POINT—DAMAGES.—Where plaintiff, as passenger on defendant's train, was carried 4 miles beyond her junction point, was compelled to wait an hour or two, was brought back on a work train and was compelled to walk a quarter of a mile, carrying one child and leading another, a verdict of $200 was not excessive.

Appeal from Crittenden Circuit Court; *W. W. Bandy,* Judge; affirmed.

*T. S. Buzbee* and *H. T. Harrison,* for appellant.

The evidence fails to show any negligence on the part of the defendant, and also fails to show any damage suffered by appellee in consequence of being carried by her station. At most she suffered annoyance and inconvenience incident to the delay at Madison and walking a few blocks in returning to Forrest City. 122 Ark. 584. The verdict is excessive. If she can recover at all, the amount should be limited to nominal damages.

*J. C. Brookfield,* for appellee.

The jury found, under proper instructions, that appellee had no notice that the junction point where change of cars was necessary had been reached, and the case is unlike that of 122 Ark. 584, cited by appellant. The verdict is not excessive. 94 Ark. 324; 81 Ark. 429.

SMITH, J. The plaintiff alleged that on the 8th day of May, 1919, she and her husband and their two children, of the ages of two and three years, were traveling overland from Oklahoma into this State by way of the town of Hazen, a station on the line of defendant's road. That, on account of the public highways becoming bad, she purchased a ticket at Hazen for Wynne, where she was to remain until the arrival of her husband in the automobile. She boarded one of defendant's passenger trains at Hazen, with the two children and a suitcase. She was not informed by either the station agent who sold her the ticket or the conductor on the train, or any of the employees of the defendant company, that she would have to change cars at Forrest City; neither was she so advised when she reached Forrest City, although her ticket was taken up by the train auditor immediately after leaving Hazen.

Plaintiff was carried by Forrest City to Madison, a town four miles east of Forrest City, where she was picked up by a work-train and carried back to Forrest City, or to a point near there, from which place she had to walk and carry her children, and later caught a train to Wynne, where she arrived eight hours later than she would have done had she been told to change cars at Forrest City.

Plaintiff's testimony supported all these allegations, except the delay in arriving at Wynne. The testimony disclosed the fact that she departed on the train she would have taken had she not been carried by Forrest City, unless she had been willing to make the trip to

Wynne on a local freight train leaving Forrest City earlier in the afternoon.

Plaintiff testified that the train on which she was a passenger stopped at Forrest City for a sufficient length of time for her to have left the train safely, but she did not leave it for the reason that she did not know she should have changed cars there. She testified that, after leaving Forrest City, a trainman came through the car and asked her rudely why she had not changed at Forrest City, and stated that she should have had sense enough to do so. Except for this rudeness she was treated very courteously by the defendant's employees with whom she came in contact. The conductor of the train which carried her by Forrest City saw the conductor of the work-train at Madison and asked him to assist plaintiff back to Forrest City, and the conductor of the work-train performed that service very courteously. He did not run his train up to the station, because his train did not have the right-of-way on the track leading there, but he stopped his train in the yards near Forrest City, and carried plaintiff's suitcase to the depot. Plaintiff says the distance she had to walk was about a mile, and that she carried one child and led the other, and was much exhausted and fatigued when she arrived at the depot. Plaintiff was evidently mistaken as to the distance she walked, but she did walk a distance of from a quarter to half a mile, and she testified that she was much perturbed by the experience.

The court refused to give, at defendant's request, a peremptory instruction in its favor. The court gave, at the instance of the defendant, an instruction to find for the defendant if the jury found that plaintiff failed to exercise ordinary care on her own behalf in respect to changing cars at Forrest City.

The defendant asked an instruction, numbered 3, which reads as follows: "The jury are instructed that, if you find from the evidence in this case that the ticket purchased by the plaintiff was a coupon form ticket, one

portion of which read from Hazen to Forrest City, and the other portion of which read from Forrest City to Wynne, and showed on its face that it was by way of the Missouri Pacific from Forrest City to Wynne, and that this would have been sufficient, under the circumstances, to put a reasonably intelligent person on notice that it was necessary to change cars at Forrest City, your verdict should be for the defendant."

The court gave this instruction after adding the following qualification: "If you further find from the evidence that plaintiff knew, or could have known by the exercise of ordinary care, when the train she was on reached Forrest City, that she had reached the place where it was necessary for her to change trains in order to go to Wynne."

An exception was saved to this modification. After modifying the instruction as indicated the court gave, over defendant's objection, the following instruction: "2. You are instructed that, if you find from a preponderance of the evidence that the plaintiff bought a ticket from Hazen which entitled her to transportation from there to Wynne, and that under that ticket she became a passenger on defendant's train, and that it was necessary for her, in order to reach the place of her destination, which was Wynne, that she should make a change of cars at Forrest City, then it became the duty of the railroad company to notify her when the train reached Forrest City, and that that was the junction of its railroad with the Missouri Pacific, the one she would have to travel on to reach Wynne; and if you find from the evidence in this case that the defendant failed to give notice, then your verdict should be for the plaintiff, if you find that the plaintiff in fact suffered any damage because of the failure of the company to give said notice."

To the giving of this instruction the defendant made the specific objection that it, in effect, imposed an absolute duty on the defendant to give notice of the change

of cars at Forrest City, and left out of consideration the fact that due and reasonable notice was given to the plaintiff by the form of the ticket which she had purchased.

We think the court properly refused to direct a verdict in defendant's favor. And we are also of the opinion that, as modified, defendant's instruction numbered 3 declared the law as favorably to defendant as it had the right to ask. And we think no error was committed in giving instruction No. 2 set out above.

The instructions should, of course, be read together; and, when so read, they advised the jury that plaintiff could not recover if she knew she should change cars at Forrest City, or, in the exercise of ordinary care, should have known it. In other words, the court submitted to the jury the question whether plaintiff had notice of the change of cars, and told the jury to find against her if she had notice. Of course, if she had this notice, she should have acted upon it, regardless of the manner in which she obtained the notice. But in instruction numbered 2 the court properly told the jury that she was entitled to notice; and so she was.

Plaintiff was not entitled to personal notice, and the instruction does not so declare the law, but she was entitled to notice, and the instruction did not leave out of consideration the fact that she might have had this notice from the form of her ticket, because the third instruction so declared the law.

The instant case is very similar to that of *St. L., I. M. & S. R. Co.* v. *Needham,* 122 Ark. 584. There, as here, the plaintiff took passage on one road for a station on another, and was carried by the station at which she should have changed cars. In that case, as in this, the train auditor testified that he advised the passenger of the necessity of changing cars when he took up the ticket, but that fact was denied in each case by the passenger. In that case the brakeman testified that, as the train approached Kensett, the station at which the plaintiff should have changed cars for Heber Springs, her

destination, a station on the M. & N. A. railroad, he
called out in the car in which plaintiff was riding for
all passengers to "Change cars for Searcy and Eureka
Springs," these being important stations on the M. &
N. A. railroad; but the brakeman did not announce that
the change should be made for Heber Springs and other
intermediate points; but the plaintiff denied having
heard the announcement which was made. We there
said: "It is clear that if there was an announcement
made, as claimed by the flagman, giving notice of the
necessity for a change of cars to points north on the
Missouri & North Arkansas Railroad, the plaintiff was
bound to take notice of her route and make the neces-
sary change. She was an adult, apparently of ordinary
intelligence, and in full possession of her senses, there-
fore the carrier was not required to give her special no-
tice of the necessity for a change of cars. All that the
law required was that a suitable regulation be made for
the convenience of passengers, and that reasonable steps
be taken to bring those regulations to the attention of the
passenger, no further individual notice being required."
A number of cases were cited in support of the doctrine
announced. It was there also said that "while the de-
fendant (railroad company) had the right to assume
that the plaintiff had informed herself as to the route
to her destination, yet the obligation rested upon the car-
rier to give some notice of the arrival at the junction
point, and of the fact that it was the junction point
applicable to the route plaintiff was traveling."

In other words, it is the duty of the carrier to give
passengers notice of the arrival of trains at junction
points for connecting railroads, and the court properly
so directed the jury, and, while it is true that no indi-
vidual notice is required, the instruction complained of
did not impose that exaction, and, if it was thought sus-
ceptible of that interpretation, a specific objection to
that effect should have been made.

It is also urged that the verdict, which was for $200,
is excessive. Upon this question it may be said that full

compensation was allowed, but we do not find that it was so excessive that it must be reduced. It is true that, while plaintiff spent the day in Forrest City, she resumed her journey on the train she would have taken had she transferred properly, unless she had taken passage on a local freight train, which she might have done; but she did have an experience which was highly annoying and which, no doubt, caused her much mental distress. Until the conductor of the work-train took charge of her, she was incumbered with a suitcase and had the care of two small children, and, thus incumbered, she waited for an hour or more at Madison, and she was compelled to carry one of these children and lead the other along the railroad track for a quarter of a mile or more after reaching Forrest City. Upon arriving at the hotel where the conductor escorted plaintiff, she was compelled to take a room and stay the remainder of the day, and, under the circumstances, we do not think the verdict is so excessive that it can be said to be unsupported by the evidence. *Hines* v. *Witherspoon*, 143 Ark. 131.

Judgment affirmed.